UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RICK MADSEN,<br><br>    Plaintiff,<br><br>vs.<br><br>SUE E. RISENHOOVER, et al.,<br><br>    Defendants. | No. C 09-5457 SBA (PR)<br><br>**ORDER RE DEFENDANT WAHIDULLAH'S MOTION FOR SUMMARY JUDGMENT AND PENDING MOTIONS**<br><br>(Dkt. 137, 151, 164, 175, 183, 187) |

Plaintiff Rick Madsen is an inmate at Pelican Bay State Prison ("PBSP") who has been diagnosed as having the Hepatitis C virus ("HCV"). He brings the instant action under 42 U.S.C. §1983 alleging claims under the Eighth Amendment for deliberate indifference to his serious medical needs based on: (1) the diagnosis and treatment of his HCV condition; (2) the denial of his requests for a hepatic diet[1]; and (3) the failure properly to treat his pain. As Defendants, Plaintiff has named: PBSP Family Nurse Practitioners Sue E. Risenhoover and M. McLean, Drs. Michael Sayre, Claire P. Williams and W. Wahidullah, and Registered Nurse Donna K. Alpaugh.

All Defendants except Defendant Wahidullah (who had not yet been served) previously filed a motion for summary judgment. The Court granted the motion as to Plaintiff's HCV claim and denied the motion as to Plaintiff's hepatic diet and pain treatment claims. The only claim pending against Defendant Wahidullah is for deliberate indifference as to Plaintiff's HCV diagnosis and treatment. Pursuant to the Court's scheduling order, the parties are presently before the Court on Defendant Wahidullah's Motion for Summary Judgment. Dkt. 137. Having read and considered the papers filed in

---

[1] A hepatic diet is a healthy low protein diet which is induced to support proper liver function.

1  connection with this matter and being fully informed, the Court hereby GRANTS the
2  motion for the reasons set forth below.

## I. BACKGROUND

The facts relevant to this case are set forth in detail in the Court's prior Order adjudicating the other Defendants' motion for summary judgment. Mar. 29, 2013 Order, Dkt. 134. The facts and findings set forth in that Order are incorporated by reference, and are summarized below to the extent they are germane to Defendant Wahidullah's Motion for Summary Judgment.

### A. PBSP'S HCV TREATMENT PROGRAM

Plaintiff arrived at PBSP in March 2002, and was diagnosed in 2005 as having HCV. Mar. 29, 2013 Order at 1. HCV is a slow-progressing infectious disease that can lead to cirrhosis of the liver. Id. at 2. When cirrhosis becomes very severe or "decompensated," the liver is unable to function properly and the patient cannot safely receive anti-viral treatment (also known as combination therapy). Id. The California Department of Corrections and Rehabilitation ("CDCR") has implemented a protocol for the treatment of inmates with HCV in the form of HCV Chronic Care Guidelines ("Guidelines"). Id. The Guidelines were developed in connection with Madrid v. Cate, No. C 90-3094 TEH (N.D. Cal. Oct. 26, 1990), a class action lawsuit brought by a prisoner rights advocacy group to address various issues relating to the conditions of confinement at PBSP, including the provision of medical care for inmates. Id. The 2004 Guidelines were revised in February 2005, January 2006, April 2008, and September 2008. Id.

The development of the Guidelines was overseen by a Special Master appointed by the assigned judge, the Honorable Thelton E. Henderson of this Court, and resulted from a series of meetings and discussions involving a panel of HCV physician experts, Court-appointed experts and the parties in the Madrid case. Id. at 2-3. The Special Master noted that the review process "far exceeded" the standard of review set by the Court and entailed "careful scrutiny of the most minute details of HCV care." Id. The Guidelines, with the agreement of the parties and the Special Master, were approved by Judge Henderson on

1 June 1, 2004.  Id.  Since the beginning of the HCV program at PBSP, over 4,000 inmates have been diagnosed with or treated for HCV.  Id.

The Guidelines set forth three Phases:  (1) Phase I:  Screening and Initial Diagnosis; (2) Phase II:  Initial Management After Diagnosis of HCV; and (3) Phase III:  Staging by Liver Biopsy and Combination Therapy.  In Phase I, HCV screening is provided to any inmate-patient, upon request.  Id. at 3.  In the event of a positive HCV test result, the inmate enters Phase II for follow up in the HCV Clinical Management Program.  Id. at 4.  Qualifying patients may undergo a liver biopsy to test liver function in tandem with anti-viral treatment.  Id.  Inmates 45 years-old and younger are required to have three separate liver enzyme alanine aminotransferase ("ALT") tests performed one month apart; if the ALT levels are elevated to less than two-times normal for all three consecutive tests, combination therapy is not indicated.  Id.  A "normal" ALT result is below 60 units per liter of blood.  Id.  Inmates older than 45 years-old are not required to have elevated ALT test results to qualify for combination therapy.  Id.

At Phase III, inmates being considered for a liver biopsy have their cases reviewed by the HCV Committee, which is a subset of the Utilization Management ("UM") Committee (also referred to as the Medical Authorization Review ("MAR") Committee). Id.  The HCV Committee, which is comprised of the practicing medical professionals at the prison, including doctors, family nurse practitioners and physician assistants, discusses treatment plans for inmates with HCV, and whether treatment should be adjusted or discontinued.  Id.  If a PBSP medical practitioner believes that a certain procedure is needed or desires review of an ongoing treatment plan, the case is referred to the UM Committee.  Id.  These committees review the individual case and either approve or deny the request.  Id.

B. **PLAINTIFF'S DIAGNOSIS AND TREATMENT**

Plaintiff entered PBSP on March 8, 2002.  Id. at 5.  On December 8, 2005, Nurse Risenhoover ordered liver function and viral load tests for Plaintiff.  Id. at 6.  The test results indicated that Plaintiff's ALT level was 94, whereas a normal ALT level is 60.  Id.

3

On December 13, 2005, Nurse Risenhoover completed a Notification to Patient of Laboratory Test Results Form on which she checked a box at the top indicating: "Your tests result is essentially within normal limits. No physician follow-up is required." Id. In the "remarks" section of the form, however, Nurse Risenhoover handwrote that Plaintiff had "abnormal elevations" of AST (83), T. Bilirubin (2.1) and ALT (83). Id. She noted "all other function normal" and that she would discuss the results with him at his next appointment. Id.

On January 9, 2006, Nurse Risenhoover saw Plaintiff and discussed his lab results with him. Id. Nurse Risenhoover's January 9, 2006 progress note indicates that Plaintiff stated, "I was real sick in county jail, I am sure my liver was elevated then, I want my hep c tx now before it gets worse. I want a liver biopsy." Id. Nurse Risenhoover's plan for Plaintiff was to enroll him into the Hepatitis C Chronic Care program, renew his Naprosyn (anti-inflammatory medicine), and refer him to physical therapy. Id.

Although the December 8, 2005 test showed that Plaintiff had an elevated ALT level, he was not eligible for combination therapy under the Guidelines because he was under forty-six years old and his ALT level was not twice normal. Id. at 6-7. Although the Phase I Guidelines specify that "[a] repeat ALT level shall be obtained *one month after initial testing* if the patient is 45 years old or younger and the initial ALT level was less than two (2) times the normal laboratory value," Plaintiff's next liver function test did not take place until May 2, 2006. Id. at 7. The May 2 test showed an ALT level of 95, meaning that Plaintiff still did not qualify for combination therapy under the Guidelines, even though he had ongoing symptoms of headaches, cold sweats, nausea, insomnia and tiredness. Id.

On July 25, 2006, Nurse Risenhoover saw Plaintiff for a follow-up visit and discussed with him the results of his June 9, 2006 liver function test, which showed an ALT level of 62. Id. Between December 2005 and September 2009, Plaintiff received twenty-two liver function tests, MED 2087, and continued to receive treatment for issues related to his HCV. Id. Between December 2005 and October 2007, Plaintiff's ALT

4

1   levels stayed below 120, the level required before combination therapy could be prescribed
2   under the Guidelines. Id.

### C. DEFENDANT WAHIDULLAH'S INVOLVMENT

Defendant Wahidullah worked as a PBSP physician from 2005 to 2007, though he never treated Plaintiff directly. Wahidullah Decl. ¶ 3, 4. Rather, Defendant Wahidullah served on HCV and UM Committees during this time period. Id. ¶¶ 5, 7, 8, 10.

The medical records show that on November 8, 2006, Defendant Risenhoover referred Plaintiff's case to the HCV and UM Committees. MED 931. On November 16, 2006, the committees reviewed Plaintiff's case and noted that he was undergoing an ultrasound followed by a HIDA scan, which they determined was the appropriate study for his gallbladder. MED 923. In addition, the committees reviewed Plaintiff's labs and found that the "record shows that he is not over 45 and no elevation of ALT greater than 2 times normal (hence as per CDC[R] policy does not meet the requirement for [liver] biopsy)." MED 923. The committees further found that Plaintiff was "not meeting the requirement for [liver] biopsy at this time based on court approv[e]d Hepatitis C guidelines." MED 924. On November 20, 2006, Defendant Wahidullah entered the committees' decision into Plaintiff's record in the Madrid Patient Information Management System. MED 923-24; Wahidullah Decl. ¶ 10.

On November 27, 2007, Plaintiff's ALT level reached 135 -- twice the normal ALT level. MED 2087. Between November 27, 2007 and March 6, 2008, Plaintiff's ALT levels remained above the requisite level of 120 needed for a liver biopsy and/or antiviral treatment. MED 2087. During this time frame, Defendant Wahidullah no longer worked at PBSP. Wahidullah Decl. ¶ 3. Despite Plaintiff's elevated ALT levels, Defendant Risenhoover did not prescribe a liver biopsy or antiviral treatment because the guidelines indicated that such treatment would be too dangerous given that Plaintiff showed symptoms of decompensated cirrhosis -- bleeding, varices and a low platelet level. MED 762, 2394.

### D. PROCEDURAL HISTORY

#### 1. Claims

In his Complaint, Plaintiff alleges that (1) Defendants Risenhoover, Sayre, Alpaugh, McLean and Wahidullah were deliberately indifferent to his serious medical needs with respect to their treatment of his HCV diagnosis, including denying him a liver biopsy and anti-viral treatment/combination therapy; and (2) Defendants Risenhoover, Sayre and Williams were deliberately indifferent in denying him a hepatic diet and adequate pain medication.

As to Defendant Wahidullah, the Court found in its Order of Service that he was a member of the committee that approved Defendant Risenhoover's denial of Plaintiff's request for a liver biopsy and antiviral treatment in November 2006. Mar. 29, 2013 Order at 4. As a result, the Court construed Plaintiff's claim against Defendant Wahidullah as one for deliberate indifference to serious medical needs based on Plaintiff's HCV treatment. The Court did not interpret pleadings as alleging any claim against Defendant Wahidullah based on the denial of a hepatic diet or pain treatment.

#### 2. Prior Summary Judgment Motion

All Defendants except Wahidullah filed a motion for summary judgment. Dkt. 73. In an Order dated March 29, 2013, the Court granted in part and denied in part Defendant Risenhoover, McLean, Sayre, Williams and Alpaugh's Motion for Summary Judgment. Specifically, the Court found that Plaintiff failed to raise a triable issue of material fact regarding his claim relating to the diagnosis and treatment of his HCV, and granted summary judgment as to this claim against Defendants Risenhoover, Sayre, Alpaugh and McLean. However, the Court denied summary judgment as to Plaintiff's other claim against Defendants Risenhoover, Sayre and Williams upon finding that there were triable issues of fact as to whether these Defendants were deliberately indifferent in denying Plaintiff a hepatic diet and adequate pain medication. The Court referred this matter to Magistrate Judge Nandor Vadas for settlement proceedings pursuant to the Pro Se Prisoner Settlement Program. The Court also set a briefing schedule for Defendant Wahidullah's

1    dispositive motion.

2        This matter remains before Magistrate Judge Vadas as part of the Pro Se Prisoner

3    Settlement Program.  On March 4, 2014, Magistrate Judge Vadas held a status conference

4    in which he directed Defendants' attorney to inform him when Defendant Wahidullah's

5    pending summary judgment motion was resolved.  Because the motion will be resolved in

6    this Order, the Court directs Defendants' attorney as well as the Clerk of the Court to

7    inform Magistrate Judge Vadas when this Order is issued, as directed below.

## II.   PRELIMINARY ISSUES

Before addressing the merits of Defendant Wahidullah's motion for summary judgment, the Court first resolves several pending motions.

### A.   PLAINTIFF'S THIRD MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed a third motion for appointment of counsel.  Dkt. 187.  Plaintiff claims that he lacks the legal training needed to prosecute this case.  Specifically, Plaintiff claims that he cannot "take the necessary depositions . . . because it requires [knowledge of] expert medical and legal issues beyond [his] scope."  Dkt. 187 at 2.

As stated in the Court's previous orders denying appointment of counsel there is no constitutional right to counsel in a civil case.  Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 25 (1981).  28 U.S.C. § 1915 confers on a district court only the power to request that counsel represent a litigant who is proceeding in forma pauperis.  28 U.S.C. § 1915(e)(1).  This does not give the courts the power to make "coercive appointments of counsel."  Mallard v. United States Dist. Court, 490 U.S. 296, 310 (1989).  The discretionary appointment of counsel typically is reserved for cases involving "exceptional circumstances."  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991).  "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'  Neither of these factors is dispositive and both must be viewed together before reaching a decision."  Id.

The Court has previously denied Plaintiff's first two requests for appointment of

counsel. Dkts. 11, 158. Plaintiff still has not shown the presence of exceptional circumstance that warrant the appointment of counsel in this action. In addition, Plaintiff has thus far been able to articulate his claims adequately pro se in light of the complexity of the issues involved. See Agyeman v. Corrs. Corp. of Am., 390 F.3d 1101, 1103 (9th Cir. 2004). Moreover, because the parties will be appearing before Magistrate Judge Vadas for further settlement proceedings, there is no need for depositions. Accordingly, Plaintiff's third request for appointment of counsel is DENIED. Dkts. 175, 187.[2]

### B. MOTION TO STRIKE DEFENDANT WAHIDULLAH'S FILINGS

Plaintiff filed a document entitled, "Motion to Strike Defendant's Summary Judgment Motion," in which he asks the Court to strike Defendant Wahidullah's motion for summary judgment and declaration on the grounds that they are untimely and duplicative of the other Defendants' prior summary judgment motion. Dkt. 151 at 2. Plaintiff's motion is without merit. Defendant Wahidullah timely filed his motion consistent with the schedule set by the Court. Dkt. 134. In addition, Defendant Wahidullah could not have joined in the other Defendants' summary judgment motion because he had not yet been served. Plaintiff's motion to strike on the grounds that Defendant Wahidullah's motion is untimely and duplicative is DENIED.

Next, Plaintiff objects to certain statements in Defendant Wahidullah's declaration. Specifically, in paragraph 12 of his declaration, Defendant Wahidullah states:

> Neither I nor the Committees engaged in any intentional or deliberate delay in providing [Plaintiff] with medical treatment. No medical provider, including myself, sought to cause [Plaintiff] medically unnecessary injury, or undue pain or suffering. At all times, medical providers treating [Plaintiff] were motivated by a genuine concern for his health and well-being.

Wahidullah Decl.¶ 12. Defendant Wahidullah adds in paragraph 13 that "[Plaintiff's] care was consistent with the degree of knowledge and skill ordinarily possessed and exercised by members of [Defendant Wahidullah's] profession under similar circumstances." Id.

---

[2] If this matter does not settle, Plaintiff may file a renewed motion for the appointment of counsel. If the Court decides that appointment of counsel is warranted at that time, it will request volunteer counsel to represent Plaintiff on a pro bono basis.

¶ 13. Plaintiff argues that Defendant Wahidullah is not qualified to provide such opinion testimony. However, because the Court does not consider these particular opinions to be pertinent to its analysis, Plaintiff's objection is OVERRULED as moot.

Finally, Plaintiff objects to and requests that the Court strike a number of statements in Defendant Wahidullah's declaration regarding: (1) Plaintiff's medical care being "within the standard of care required by the HCV treatment guidelines"; (2) Defendant Wahidullah "not recall[ing] ever physically examining [Plaintiff]"; and (3) Defendant Wahidullah not acting as Plaintiff's "treating physician or primary care physician." Dkt. 151 at 3. However, the record shows the CDCR has implemented a protocol for the treatment of inmates with HCV in the form of the Guidelines, a copy of which has been made available for the Court's review. See Sayre Decl. ¶ 7 & Ex. E (copy of Guidelines in effect from May 2004 to September 2009). Therefore, the Court shall review the record to determine whether there is a triable issue of fact as to whether Plaintiff's medical care was within the standard required by the Guidelines. Furthermore, it is inapposite whether Defendant Wahidullah examined or treated Plaintiff, given the allegation in his Complaint that Defendant Wahidullah was liable for being one of the members on the HCV and UM committees who reviewed his HCV treatment. Accordingly, because the aforementioned statements are not pertinent to the Court's analysis, these remaining objections are OVERRULED as moot.

C.  **DEFENDANT WAHIDULLAH'S MOTION FOR COURT TO CONSIDER REPLY**

Defendant Wahidullah has filed a motion entitled, "Motion for the Court to Consider [His] Reply In Support of Summary Judgment." Dkt. 183. The Court construes this motion as a request for a two-day extension of time, up to and including July 8, 2013, in which to file a reply. Having read and considered Defendant Wahidullah's request and the accompanying declaration of counsel, and good cause appearing, the request for an extension of time is GRANTED. The time in which Defendant Wahidullah may file his reply will be extended nunc pro tunc to July 8, 2013, the date that his reply was filed.

### D. PLAINTIFF'S OBJECTIONS TO DR. SAYRE'S DECLARATION

In paragraph 30 of his declaration, Defendant Sayre states as follows: "A 'normal' ALT result is below 60 units per Liter of blood. (See, e.g., MED 1248.) The Guidelines used the level of twice normal (120 units per Liter) to determine whether individuals under 46 years old qualified for combination therapy. (MED 2387.)" Sayre Decl. ¶ 30. Plaintiff objects to these statements as being unsupported by the record. Dkt. 164 at 1-2. This objection lacks merit. The record shows that the normal "reference range" for an ALT result is "3-50 U/L" which is equivalent to a range *below* 60 units per Liter of blood. MED 1248. Furthermore, the Guidelines state, "Inmate-patients 45 years old or younger with ALT levels elevated to *less than two (2) times normal laboratory values* for all three (3) ALT tests performed . . . are not eligible for combination therapy . . . ." MED 2387 (emphasis added). Thus, twice normal could then be estimated to be "120 units per Liter [of blood]," as Defendant Sayre has stated. Sayre Decl. ¶ 30. Therefore, the Court declines to strike Defendant Sayre's aforementioned statement and OVERRULES Plaintiff's objection.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324; Matsushita Elec. Indus.

10

1   Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

2   "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. A factual dispute is genuine if it "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a motion for summary judgment. Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

## IV. DISCUSSION

### A. SCOPE OF DELIBERATE INDIFFERENCE CLAIM

As a preliminary matter, the Court must determine the scope of the deliberate indifference claim against Defendant Wahidullah. It is undisputed that Plaintiff stated a cognizable deliberate indifference claim in his Complaint against Defendant Wahidullah based on his involvement in the committees that reviewed Plaintiff's HCV treatment. However, in his opposition and supporting papers, Plaintiff now attempts to raise a new, second claim that Defendant Wahidullah was deliberately indifferent to his serious medical needs by failing to provide him with a hepatic diet. Dkt. 165 at 2, 8. As Defendant Wahidullah correctly points out in his reply, Plaintiff's opposition and supporting declaration raise a new claim regarding his diet that is beyond the scope of the pleadings. As such, Defendant Wahidullah requests that the Court not consider a second claim against him relating to the denial of Plaintiff's hepatic diet. Reply at 4-5.

On a motion for summary judgment, the plaintiff's allegations and theories of liability are confined to those found in the operative complaint. Pickern v. Pier 1 Imps. (U.S.), Inc., 457 F.3d 963, 968-69 (9th Cir. 2006) (refusing to allow the plaintiff to assert new specific factual allegations in support of a claim when they were "presented for the first time in [the plaintiff's] opposition to summary judgment"); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."). Accordingly, the Court confines its analysis and consideration of evidence to those claims pled in Plaintiff's operative Complaint.

Plaintiff's position appears to be that he, in fact, previously alleged a claim against Defendant Wahidullah based on his dietary issues. Plaintiff asserts that in his Complaint, he alleged that "[o]n 8/21/06, Dr. Sayre and *unknown* defendants (UM, HCV, HCRC, MAR committee members) denie[d] Plaintiff's concerns regarding his medical care treatment stating no evidence of gall stones or obstructions [. . . ] regular diet sufficient to meet [patient] calories content and choice deletions." Dkt. 1 ¶40 (emphasis added). Plaintiff alleges that Defendant Wahidullah, who admitted to serving on the MAR committee in 2006, is one of these "unknown defendants" and should be held liable for the decision made by the MAR committee on August 21, 2006. Dkt. 185 at 1-4.

Plaintiff's attempt to pursue a new deliberate indifference claim against Defendant Wahidullah is unavailing. In its March 29, 2013 Order, the Court dismissed all Doe Defendants, including any "unknown defendants" from this action. Dkt. 22 at 5. The Court specifically informed Plaintiff that, "[s]hould [he] learn Doe Defendants' identities through discovery, he may move to file an amended complaint to add them as named defendants." Id. At no time did Plaintiff move to file an amended complaint to identify Defendant Wahidullah as one of the "unknown defendants" responsible for the MAR committee decision on August 21, 2006. Therefore, Defendant Wahidullah was not placed on notice that such allegations in the Complaint were directed at him and that he needed to prepare a defense thereto.

1    In sum, Plaintiff cannot now raise a new Eighth Amendment claim against Defendant Wahidullah based on these allegations pertaining to his diet.  The Court will address only the one Eighth Amendment claim against Defendant Wahidullah pled in the Complaint and found to be cognizable.  Specifically, in its March 29, 2013 Order, the Court found that Plaintiff alleged a cognizable Eighth Amendment claim that Defendant Wahidullah, as a member of the HCV and UM committees in November 2006, approved the denial of a liver biopsy and antiviral treatment.  Mar. 29, 2013 Order at 4 (citing Compl. at 16).

### B. DELIBERATE INDIFFERENCE CLAIM

#### 1. Overview

Deliberate indifference to serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  "Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  In order to be liable for deliberate indifference, an official must know of and disregard an excessive risk to inmate health or safety.  Farmer v. Brennan, 511 U.S. 825, 832 (1991).  Two requirements must be met: (1) the deprivation must be, objectively, sufficiently serious; and (2) the prison official must be, subjectively, deliberately indifferent to inmate health or safety.  Id. at 834.  As to the subjective factor, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference.  Id.  In addition, harm must have resulted from the indifference.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

To prevail on a claim involving choices between different treatment modalities, a plaintiff must show that the chosen treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health."  Toguchi, 391 F.3d at 1058 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).  Deliberate indifference is a state of mind "more blameworthy than

negligence." Farmer, 511 U.S. at 835. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Only a prison official who knows both of "facts from which the inference could be drawn" that an excessive risk of harm exists and who actually draws that inference is deliberately indifferent to the inmate's health. Farmer, 511 U.S. at 837. A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### 2. Analysis

Defendant Wahidullah acknowledges that Plaintiff's health problems resulting from his HCV diagnosis constitute a serious medical need. However, Defendant Wahidullah contends that he was not deliberately indifferent in responding to Plaintiff's medical and health issues.

In its earlier summary judgment ruling, the Court determined that Defendant Risenhoover followed court-approved guidelines for treating HCV, and therefore, there were no triable issue of fact as to whether this Defendant was deliberately indifferent to Plaintiff's serious medical needs.[3] Mar. 29, 2013 Order at 24-25. In opposing the prior summary judgment motion, Plaintiff had argued that he should have been allowed to undergo a liver biopsy and/or antiviral treatment by November 2007, after his ALT levels

---

[3] As mentioned above, the Court also granted summary judgment as to Plaintiff's deliberate indifference claim against Defendants Sayre and Alpaugh. The Court found that Plaintiff failed to raise a triable issue of fact as to whether these Defendants "purposefully ignored or failed to respond to his medical needs by denying . . . requests for medical review." Mar. 29, 2013 Order at 29. The claim against these Defendants arose from their involvement as members of the committees approving the treatment of Plaintiff's HCV diagnosis. Compl. at 19. While this claim appears to be similar to Plaintiff's claim against Defendant Wahidullah, the record shows otherwise because these Defendants were not committee members during the same time-frame. Defendant Wahidullah was involved in the committees' November 16, *2006* decision, while Defendants Sayre and Alpaugh were involved in the committees' August 6, *2007* decision. For this reason, the Court will focus on its previous analysis from its March 29, 2013 Order relating to Plaintiff's claim against Defendant Risenhoover only.

became sufficiently high under the Guidelines to indicate such treatment; i.e., twice their normal level. However, the Court noted that the record showed that "by the point that Plaintiff qualified for a liver biopsy and combination therapy (based on his age and ALT levels), such treatment was excluded under the Exclusion Criteria for Combination Therapy, which provides that no biopsy or treatment should be given to patients with decompensated cirrhosis." Id. at 24 (citing MED 2394; Sayre Decl. ¶¶ 27-28). Specifically, the Court found no triable issue of fact as to whether Defendant Risenhoover was "deliberately indifferent by following the protocols established in the Madrid case which were aimed at ensuring constitutionally adequate medical care." Id. Plaintiff countered that notwithstanding the Exclusion Criteria, he should have been allowed to undergo antiviral treatment, even if a liver biopsy were contraindicated.

In opposing the instant motion, Plaintiff re-asserts this argument as to his claim that Defendant Wahidullah was deliberately indifferent for participating in the committee's decision to deny Plaintiff antiviral treatment for his HCV "causing [him] to linger in severe pain and suffering as [his] health deteriorated to cirrhosis, end stage liver disease -- liver cancer -- and other . . . severe health problems." Dkt. 166 at 5-6. Plaintiff presents no evidence to support this assertion. First, the record shows that when Plaintiff's ALT level reached 135 on November 27, 2007, Defendant Wahidullah no longer worked at PBSP. MED 2087; Wahidullah Decl. ¶ 3. Second, even if Defendant Wahidullah had still been working at PBSP at the time Plaintiff reached the requisite ALT level for antiviral treatment, the Court has already found no deliberate indifference on the part of Defendant Risenhoover because the record demonstrates her decision to deny such treatment, notwithstanding Plaintiff's ALT levels, was entirely consistent with the Guidelines. Mar. 29, 2013 Order at 24. The decision was consistent with its Exclusion Criteria, which provides that no such treatment should be given to patients displaying symptoms of decompensated cirrhosis, such as Plaintiff. Id. The Court therefore determined that there was no evidence showing that the decision was medically unacceptable. Id. In the same manner, because Defendant Wahidullah served on committees approving the decision

1  under the same guidelines, the Court finds that there is no triable issue of fact as to whether
2  he was deliberately indifferent to Plaintiff's medical needs.  Specifically, Plaintiff offers no
3  evidence that Defendant Wahidullah's involvement in the committees' approval of
4  Defendant Risenhoover's decision was medically unacceptable or chosen in conscious
5  disregard for his health.  See Jackson, 90 F.3d at 332.

6        Finally, while Plaintiff may disagree with the decision to deny him a liver biopsy
7  and/or antiviral treatment -- recommended by Defendant Risenhoover and approved by
8  Defendant Wahidullah -- such disagreements do not create triable issues in support of his
9  claim that Defendant Wahidullah acted with the deliberate indifference necessary for
10  Plaintiff to survive summary judgment.  See Toguchi, 391 F.3d at 1058, 1059-60.
11  Accordingly, summary judgment for Defendant Wahidullah is GRANTED.

12     **C.  QUALIFIED IMMUNITY**

13        As an alternative matter, Defendant Wahidullah contends that he is entitled to
14  summary judgment on the grounds of qualified immunity.  Def. Wahidullah's Mot. at 8.
15  "Qualified immunity shields an officer from suit when she makes a decision that, even if
16  constitutionally deficient, reasonably misapprehends the law governing the circumstances
17  she confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  The issue of qualified
18  immunity generally entails a two-step process, which requires the court to first determine
19  whether the defendant violated a constitutional right, and then to determine whether that
20  right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  In Pearson v.
21  Callahan, 555 U.S. 223 (2009), the Supreme Court modified the Saucier test and "gave
22  courts discretion to grant qualified immunity on the basis of the 'clearly established' prong
23  alone, without deciding in the first instance whether any right had been violated." James v.
24  Rowlands, 606 F.3d 646, 650-51 (9th Cir. 2010) (discussing Saucier standard after
25  Pearson).  The relevant, dispositive inquiry in determining whether a right is clearly
26  established is whether it would be clear to a reasonable officer that his conduct was
27  unlawful in the situation he confronted.  Saucier, 533 U.S. at 202; see, e.g., Estate of Ford
28  v. Caden, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (court may grant qualified immunity by

viewing all of the facts most favorably to plaintiff and then finding that under those facts the defendants could reasonably believe they were not violating the law).

The Court has concluded above that there was no constitutional violation pertaining to Plaintiff's claim regarding the diagnosis and treatment of his HCV. Thus, on these facts, viewed in the light most favorable to Plaintiff, Defendant Wahidullah prevails as a matter of law on his qualified immunity defense because the record establishes no Eighth Amendment violation. See Harlow, 457 U.S. at 818. However, even if a constitutional violation had occurred with respect to Plaintiff's claim of deliberate indifference to his serious medical needs, in light of clearly established principles at the time of the incident, Defendant Wahidullah could have reasonably believed his conduct was lawful. See Estate of Ford, 301 F.3d at 1049-50.

Defendant Wahidullah does not dispute that Plaintiff's right to be free from deliberate indifference to his serious medical needs was clearly established during the relevant period in the instant matter. However, he argues, and the Court agrees, that based on the information available to him, Defendant Wahidullah's approval of Defendant Risenhoover's course of action was reasonable because it was within the Guidelines to do so. While the decision to deny Plaintiff a liver biopsy and antiviral treatment was a significant one, Defendant Wahidullah has shown that such treatment options were considered and reviewed on numerous occasions, the decision to deny such treatment options was not medically unacceptable under the circumstances; and that the committees' approval of that decision was consistent with the Guidelines developed in the Madrid class action lawsuit. Therefore, a reasonable medical staff member in Defendant Wahidullah's situation could have believed that approving such a decision did not violate Plaintiff's clearly established constitutional rights.

Accordingly, Defendant Wahidullah is entitled to qualified immunity as to Plaintiff's deliberate indifference claim with respect to the treatment and care of his HCV diagnosis, and his motion for summary judgment is GRANTED on those grounds as well.

17

## V. **CONCLUSION**

To summarize, in its March 29, 2013 Order, the Court found that Plaintiff failed to raise a triable issue of material fact regarding his claim against Defendants Risenhoover, Sayre, Alpaugh and McLean relating to the diagnosis and treatment of his HCV. For the same reasons, the Court now finds that Plaintiff has failed to raise a triable issue of material fact regarding a similar claim relating to the diagnosis and treatment of his HCV against Defendant Wahidullah. However, the Court has determined that there are triable issues of fact as to whether Defendants Risenhoover, Sayre and Williams were deliberately indifferent in denying Plaintiff a hepatic diet and adequate pain medication. Therefore, that claim is still pending as to the other Defendants. Accordingly,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's third request for appointment of counsel is DENIED. Dkts. 175, 187.

2. Plaintiff's "Motion to Strike Defendant's Summary Judgment Motion" is DENIED and the objections set forth therein are OVERULLED AS MOOT. Dkt. 151.

3. Defendant Wahidullah's "Motion for the Court to Consider [His] Reply In Support of Summary Judgment," which is construed as a motion for an extension of time, is GRANTED. Dkt. 183. The time in which Defendant Wahidullah may file his reply will be extended nunc pro tunc to July 8, 2013, the date that his reply was filed.

4. Plaintiff's objections to Defendant Sayre's declaration are OVERRULED. Dkt. 164.

5. Defendant Wahidullah's motion for summary judgment is GRANTED. Dkt. 137. Summary judgment is GRANTED as to Plaintiff's deliberate indifference claim against Defendant Wahidullah. Judgment will not be entered at this time, however, because there remains an Eighth Amendment claim against Defendants Risenhoover, Sayre and Williams that must be litigated. A single judgment will be entered, if appropriate, after that claim is resolved.

6.     It is Plaintiff's responsibility to prosecute this case. He must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.

7.     Because Defendant Wahidullah's motion for summary judgment has been resolved in this Order, the Court directs Defendants' attorney as well as the Clerk to inform Magistrate Judge Vadas when this Order is issued. This matter shall then be reset on Magistrate Judge Vadas's calendar for settlement proceedings.

8.     The Order terminates Docket nos. 137, 151, 164, 175, 183 and 187.

IT IS SO ORDERED.

Dated: 3-31-14

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\CR.09\Madsen5457.Wahidullah-grantMSJ-revisedkkf.docx